IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. RDB 10-0281 |
| v. | * | |
| RAINE ZIRCON CURTIS, | * | |
| Defendant. | * | |

*******

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

Now comes the United States of America by its counsel, Rod J. Rosenstein, United States Attorney for the District of Maryland and John F. Purcell, Jr., Assistant United States Attorney for said District, and in support of the government's motion for the pretrial detention of the defendant pursuant to 18 U.S.C. § 3142, says:

I.   **Introduction**

A detention hearing in this case is scheduled for Wednesday, June 23, 2010 at 3:30 p.m. On May 28, 2010, United States Magistrate Paul W. Grimm, after a hearing on the government's motion, ordered that the Defendant, Raine Zircon Curtis, be detained while pending trial on charges of perjury and obstruction of justice in connection with the investigation of the murder of a federal witness, Kareem Guest, on September 20, 2009. Judge Grimm concluded that it was self-evident that a person, such as the defendant, who committed perjury in the grand jury and made false statements to government agents in order to obstruct the investigation of the murder of a federal

1

witness–and who has thereby protected the murderer himself from arrest and prosecution, presents an obvious danger to the community. Corrupting the effective operation of the judicial system upon which members of society must rely for protection seriously interferes with the function of an orderly society.

This memorandum is intended to describe to some extent the prior proceedings in this case and to provide, pursuant to 18 U.S.C. § 3142(g), a summary of the facts and circumstances concerning the nature and seriousness of the offense and the danger to the community that would be posed by the release of the defendant. It is hoped that this memorandum, together with the pretrial services report and Judge's Grimm's findings in support of the original Order of Detention will assist the court in consideration of the government's motion for detention of the defendant while pending trial for perjury and obstruction of justice in connection with the investigation of the murder of a federal witness, Kareem Guest, on September 20, 2009.

## II.   Procedural Background

On May 25, 2010, a federal grand jury in Baltimore returned a three-count indictment of the defendant. In Count One, she was charged with perjury, on February 4, 2010, before the federal grand jury investigating the murder of a federal witness, Kareem Guest on September 20, 2009, in violation of 18 U.S.C. § 1623. The maximum penalty for Count One is five years imprisonment. In Count Two, the defendant was charged with making false statements to federal investigators conducting the Guest murder investigation, in violation of 18 U.S.C.§ 1001, the maximum penalty for which is also five years imprisonment. In Count Three, Curtis is charge with obstruction of justice, in violation of 18 U.S.C. § 1503, for which the maximum penalty is twenty years.

On May 26, 2010, Curtis was arrested and presented for her initial appearance, at which time the government moved for detention under 18 U.S.C. § 3142. On May 28, 2010, a detention hearing was held before United States Magistrate Judge Paul W. Grimm following which the defendant was ordered detained pending trial. The trial has been scheduled for November 15, 2010.

On June 10, 2010, the defendant filed a motion seeking revocation of the order of detention, pursuant to 18 U.S.C. § 3145(b). The hearing, at which the issue of detention is considered *de novo*, is scheduled for June 23, 2010.

### III.   The Investigation of the Murder of Kareem Guest

#### A.   The Unauthorized Disclosure of Discovery Materials That Identified Kareem Guest As A Federal Witness

In January 2008, special agents and deputized task force officers of the Federal Bureau of Investigation (the "FBI") were conducting an investigation into the violation of federal drug trafficking and firearms laws in the Westport area of Baltimore, Maryland. The FBI case number for the Westport investigation was 281-BA-10642. On January 9, 2008, FBI agents interviewed Kareem Guest concerning his knowledge of individuals involved in violations of federal drug trafficking and firearms laws in the Westport area of Baltimore, where Guest resided. The substance of the FBI interview of Kareem Guest on January 9, 2008 was detailed in a nine page typewritten FBI report ("302") written an FBI agent and an FBI Task Force Officer.

The FBI investigation resulted in indictment and prosecution of eight defendants in *United States v. Jamal Stewart, et. al.*, case number WDQ 08-0415, in the United States District Court for the District of Maryland (Northern Division). By June 2009, all but two of

the defendants in the Stewart case had pled guilty. In late May, in anticipation of a trial in early June, government counsel provided copies of discovery materials, including the Guest 302, to the defense attorneys for these two remaining defendants. These FBI 302s were disclosed in discovery because Kareem Guest and the other individuals were potential federal witnesses in the pending trial against the two remaining defendants in the *Stewart* case. Because the other defendants had entered early guilty pleas, counsel for those defendants were never provided the Guest 302 or those of the other possible cooperating witnesses. The materials sent to these attorneys were also marked in such a way as to identify them as discovery provided by the U.S. Attorney's Office. Ultimately, there was no trial as both defendants entered guilty pleas on the first day of trial before Judge Quarles in early June 2009. By then, however, the damage that led to the murder of Kareem Guest had already been done. Investigation subsequent to the murder of Mr. Guest revealed that just prior to the trial in June 2009, an attorney (whose identity is known to the government) for one of the two remaining defendants, without permission from the U.S. Attorney's Office and in direct violation of the discovery agreement put in place to prevent these very sorts of disclosures, provided a copy of the discovery materials–including the Guest 302 - first to his incarcerated client and then to his client's mother, who, for reasons that will become clear at trial, distributed and displayed these materials throughout Westport.

      Investigation has revealed that during the summer of 2009, numerous individuals in Westport obtained or viewed copies of the FBI 302 describing the interview of Kareem Guest as well as FBI 302s of numerous other witnesses that had been provided to the lawyer for one of the two remaining defendants in the Stewart case. It is known that several individuals confronted Guest about the substance of the 302 and how it came about.

### B.      The Murder of Kareem Guest on September 20, 2009

In September 2009, Kareem Guest was living in Westport with his mother. The mother of Mr. Guest's young daughter, whom Mr. Guest visited often, also lived in Westport, on Wilgrey Street.

On September 20, 2009, at approximately 10:00 p.m., Kareem Guest was shot and killed on the pedestrian walkway that crosses the middle of the 2400 block of Maisel Court. Mr. Guest suffered numerous gunshot wounds to the head and body. *See*, Attachment A, at #3 (site of the murder) *and* Attachment B (close up photograph of the walkway where the murder occurred in the foreground and the 2400 block of Maisel Street in the background).

The federal investigation of the murder of Kareem Guest began the next day. From September 21, 2009 and continuing through the present, the FBI and a federal grand jury have conducted a criminal investigation into the murder Kareem Guest and in particular, into violations of 18 U.S.C. § 924(c) (use of a handgun in relation to a crime of violence) and 18 U.S.C. § 1512 (obstruction of justice/witness murder). The FBI and grand jury investigations sought to identify and interview any individuals with knowledge of the murder. It was, of course, material to these investigations to identify any witnesses to the murder and to discovery the location of those witnesses relative to the murder scene. Numerous interviews to that end have been conducted to date, leading in some instances to grand jury testimony. In the course of the investigation prior to February 4, 2010, the defendant, Raine Zircon Curtis, was identified as a witness to the murder.

### C.      The Grand Jury Perjury of RAINE ZIRCON CURTIS

Appearing before the grand jury under subpoena on February 4, 2010, the defendant

was questioned under oath as to her knowledge about the murder of Kareem Guest, and in particular about her location and the identity of individuals also present at the time of the murder. The indictment specifies certain statements by the defendant that are alleged to be false about matters material to the investigation. In summary, the defendant denied being present at or being a witness to the murder of Kareem Guest. She testifed that she did not even know about the murder until she arrived at the home of a friend on Annapolis Road (in Westport) later that night. She denied seeing the murder or hearing the gunshots, and, of course, offered nothing in terms of identifying witnesses to the murder. When she was asked about whether and where she saw an individual of interest known to the defendant as Seattle, as well as another individual of interest known to the defendant as Avery, the witness denied seeing Avery at all and admitted only to seeing Seattle (alone) in an area of Westport known as the blacktop. The blacktop –which is adjacent to Kermit Court, is rather removed from the murder scene. *See* Attachment A.

Also on February 4, 2010, the grand jury heard testimony from another witness as follows. The witness testified that he and individual named Seattle (whose legal name was known to the witness and is known to the government) were present on the 2400 block of Maisel Court at the time the murder of Kareem Guest. Further, the witness stated that he witnessed the murder and that at the time of the actual murder he was on Seattle's cell phone talking to the defendant's incarcerated boyfriend, known to him as Hershl. This witness testified that Hershl had called Seattle's cell phone from a state prison facility and that prior to the witness speaking to Hershl, both Seattle and the defendant spoke to Hershl–and that all of this occurred while all three were on the middle of 2400 block of Maisel Court just prior to the murder. *See* Attachment B.

D. **The Defendant's Recorded Admission on September 21, 2009**

Within a few days of the defendant's testimony on February 4, 2010, the government obtained copies of the recorded prison calls of Hershl, the defendant's boyfriend, whose actual name is known to the government. As to the events of September 20, 2009, the recordings reveal that Hershl, using a prison phone account in his name, called a third party phone from which his call was forwarded to Seattle's cell phone. Upon being connected, Hershl spoke to Seattle, the Defendant and the witness who described this call to the grand jury. The evidence also shows that the call was abruptly terminated at the receiving end at the time of the murder.

Recordings of Hershl's calls on September 21, 2009, the day after the Guest murder, were also obtained. In one of those he called the defendant, at which time she made several statements that totally belied her grand jury testimony on February 4, 2010 and which, in large part, provide the basis for the present indictment. As Judge Grimm heard at the original detention hearing, and as this court will hear, about five minutes into this call (made to the cell phone recovered from the defendant when she was arrested) Hershl asked the defendant why she did not answer when he called her later the previous evening. The defendant explained that she was running; that she had been in Westport; that "Kareem" got shot last night; and that it **happened right in front of her**. The defendant's exact words, as very distinctly preserved on the recording, are as follows :

CURTIS: **Kareem got killed last night. They killed that boy while we was right there.**

**As soon as you got off the phone. We was standing right there.**

*See*, Attachment 3 (CD recordings of September 20 and 21st--which will be provided at the hearing, though a copy well be provided sooner if the court prefers).

In addition to the defendant's explicit admission as to her presence at the murder, as shown both by her participation in the recorded call of September 20, 2009 and the testimony of another

witness, several witnesses have testified that they saw the defendant at the scene of the shooting on Maisel Court with Seattle and Avery. One grand jury witness testified that the witness spoke to the defendant in Westport minutes after the shooting at which time the defendant asked the witness if she had heard the gunshots. The defendant also stated to this witness that she was on Maisel Court with some other people when Kareem was shot.

The defendant also admitted to another grand jury witness that she had seen the shooting and that she told the grand jury that she was not there.

### E. The Defendant's False Statements on February 24, 2010

Upon obtaining Hershl's recorded calls to Seattle and the defendant, which revealed the defendant's perjury before the grand jury, the defendant was given an opportunity to address the matter. On February 24, 2010, the defendant and her then- attorney appeared at the U.S. Attorney's Office in Baltimore for a voluntary meeting with federal investigators. The defendant, in the presence of her attorney, was advised that it was believed that she had committed perjury and that the government had several sources of evidence to prove perjury. The substance of the defendant's prior grand jury testimony was reviewed with her. As stated, that testimony was that she was not present and did not have any knowledge about the murder of Kareem Guest. Upon hearing the description of her grand jury testimony, the defendant stated that her testimony had been correctly described and that she stood by it. At this point, the defendant's September 21 recorded call with Hershl was played for her attorney out of the defendant's presence. The attorney (not Mr. Murtha at that time) then spoke to the defendant in private after which the meeting was concluded. Mr. Murtha was appointed some time later and the September 21 call was also played for counsel to inform and assist his representation of the defendant.

8

## IV. Factors to Be Considered for Detention

The factors that were applied by Judge Grimm and which this court must now apply when considering a motion for detention are set forth in 18 U.S.C. § 3142 (g) as follows:[1]

> (g) Factors to be considered.--The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required

18 U.S.C. § 3142(g)

---

[1] A copy of Magistrate Judge Grimm' Order of Detention is affixed as Attachment 4.

The nature and circumstances of the crimes charged here are of the utmost seriousness. The murder of a witness- a federal witness- in a large urban drug trafficking prosecution is a crime against the witness, the victimized community and the justice system as a whole.

The evidence of the defendant's guilt is not only strong, it is overwhelming in that it is based on the defendant's own recorded admissions that she present at the scene of the murder of Mr. Guest, for whom she has never demonstrated a single iota of sympathy or concern, as evidenced by her casually dismissive attitude about the murder on the recorded calls.

The pretrial services report addresses other aspects of the defendant's background. Still others emerged at the detention hearing, such as that the defendant has given up care of her children to another and that she was living, in apparent near-destitution, in a house for which electrical power is provided by an extension cord to a neighboring dwelling. The court might also consider that at the time of her arrest the defendant was carrying the very cell phone that was contacted by Hershl on September 21, 2009. In addition, the defendant was in possession of ten percocet pills– a prescription drug for which she had no prescription and the possession of which she has explained with two more less than plausible fabrications; that the percocet was for cancer–which she does not have, and that it was for a back injury, despite that the defendant stated at the detention hearing that she had no medical issues.

Moreover, the refusal by the defendant to identify the murder of Kareem Guest is NOT based on fear, as this court may have seen in other cases. Outside the grand jury, the defendant has expressed pride in her refusal to cooperate with authorities. The defendant's refusal is based on her disregard for Guest and his family, her obvious contempt for the justice system and her overarching loyalty to the code of the streets. Further, based on interviews with several people who know her

(including Hershl- who identified the defendant's voice on the September 21 recording ) the defendant has never stated that her refusal to identify the murderer is based on concern about violent retaliation. To the contrary, she has expressed pride in not being "snitch." Prior to her present detention, at least, the defendant is known to have described the present federal perjury prosecution as a "joke" and has stated that she'd be fine with going to jail as long as she was released in time for her children's graduation. Perhaps now the defendant realizes that if she is convicted, as she will be, it is unlikely that she' ll be attending any graduations for quite some a while, since the government will seek the maximum thirty-year sentence, and will be appropriate.

The defendant has shown herself to be adept at crafting fabrications that conveniently, and misleadingly, cast her in a sympathetic light. For example, she stated, falsely, in the grand jury that her brother was murdered as a result of being a witness. However, the government has obtained the homicide file for the defendant's brother. Shay Carter was indeed murdered, but the circumstances had nothing to do with being a witness. In fact, the defendant's brother was murdered by a criminal associate in a dispute over money connected to their fraudulent check cashing scheme, as that associate admitted at his state guilty plea. As this court is well aware, there have been heroes who paid the ultimate price for stepping forward as witnesses. The defendant's brother was not one of them.

Magistrate Judge Grimm, of course, has already applied the § 3142 factors to the defendant and concluded that she poses a serious danger to the community that requires her detention. The basis for that conclusion is obvious –the defendant is shielding the murderer of a federal witness from prosecution for that crime. She therefore poses a direct threat to the very core of the criminal justice system, the integrity of which members of society must rely upon to protect them and render justice.

The defendant has provided false testimony and statements, and done so deliberately and repeatedly. She is protecting a still unknown murderer, thus emboldening that individual and who knows how many others to do the same thing. If that conduct, which continues to this day, does not pose a danger to society, it is hard to imagine what does. Further, as Magistrate Judge Grimm observed, a defendant whose conduct has already evidenced such disregard for the rule of law and the criminal justice system as a while cannot reasonably be relied upon to abide by any terms of release. The murderer of Kareem Guest acted with impunity in front of people he knew and upon whom the murderer knew he could rely, and still relies, to not identify him and protect him from prosecution. A person, such as the defendant, who provides shelter to a murderer poses no less a threat to the community than the murderer himself. The defendant's acts have compounded that crime, and her actions warrant detention now, and later, following her certain conviction, the imposition of the maximum sentence allowed by law.

Accordingly, given the circumstances of this case, the incredibly serious nature of the charges, the unquestionable strength of the government's case and the very real and continuing danger posed to the community by the defendant's ongoing protection from prosecution of the individual who murdered Kareem Guest last September, the government requests that the Court affirm Magistrate Judge Grimm and order that the defendant be detained pending trial.

Respectfully submitted,

Rod J. Rosenstein
United States Attorney

By: _____
John F. Purcell, Jr.
Assistant United States Attorney
36 South Charles Street

Fourth Floor
Baltimore, Maryland 21201
(410) 209-4800

### Certification

I hereby certify that on this 21 day of June, 2010, a copy of the foregoing Government's memorandum in Support of Detention was electronically filed with the U.S. District Court for the District of Maryland, Northern Division, and an electronic copy provided to:

Joseph Murtha, Esquire
Miller, Murtha and
    Psoras, LLC
Heaver Plaza, Suite 108
1301 York Road
Lutherville, MD   21093

                                                    _____
                                                    John F. Purcell, Jr.
                                                    Assistant U.S. Attorney





IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MAY 2 8 2010

UNITED STATES OF AMERICA

vs.

Case No. RDB-10-0281

RAINE ZIRCON CURTIS

\*\*\*\*\*\*

## ORDER OF DETENTION (18 U.S.C. § 3142)

In accordance with the Bail Reform Act, 18 U.S.C. § 3142(f), a detention hearing has been held. I have concluded that the following facts require the detention of the defendant pending the trial of this case.

### PART I: FINDINGS OF FACT

☑ (1) This is a case in which the [government may properly seek detention] or [the court may consider ordering detention sua sponte].

☑ (2) The defendant is charged under: _false statement 18 USC 1001, false declaration to Federal Grand Jury 18 USC 1623; Obstruction of Justice_

☑ (3) The maximum term of imprisonment, if convicted, is: _10 yrs._   _18 USC 1503_

☑ (4) Based on the government's [proffer] [evidence] there is probable cause to believe that the defendant committed the offense(s) charged.

N/A
☐ The government is entitled to a presumption under § 3142 (e) [describe in Part II].
☐ The defendant has failed to rebut this presumption [as to flight risk] or [as to danger].

☐ (5) I find, by a preponderance of the evidence, from the information produced at the hearing that there is a serious risk that the defendant will not appear.

☑ (6) I find, by clear and convincing evidence, from the information produced at the hearing that the defendant poses a risk to the safety of other persons and the community.

☑ (7) I find by clear and convincing evidence that there is no condition or combination of conditions which will reasonably assure [the defendant's presence at trial or as otherwise required] [community safety].

### PART II: WRITTEN STATEMENT OF ADDITIONAL REASONS FOR DETENTION

_Defendant is charged with perjury in testimony before grand jury relating to homicide of a witness in a police prosecution. Despite the fact that defendant has no prior criminal record, and despite the requirements of 18 USC 3142(f)(2)(B), the government's proffer has established by clear and convincing evidence that there is a serious risk that defendant will attempt to obstruct justice / obstruct justice warranting detention._

The defendant is committed to the custody of the Attorney General or his/her designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the U.S. Marshal shall deliver the defendant for the purpose of an appearance in connection with a court proceeding.

May 28, 2010
Date

PAUL W. GRIMM
UNITED STATES MAGISTRATE JUDG

D